Keith M. WEST, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 93–SC–448–DG.

Supreme Court of Kentucky.

Sept. 29, 1994.

Rehearing Denied Dec. 22, 1994.

J. David Niehaus, Deputy Appellate Defender of the Jefferson Dist. Public Defender (Daniel T. Goyette, Jefferson Dist. Public Defender, of counsel), Louisville, for appellant.

Chris Gorman, Atty. Gen., C. Lloyd Vest, II, Sp. Asst. Atty. Gen., Louisville, for appellee.

STUMBO, Justice.

This appeal arises from an order of the Jefferson Circuit Court which required the police to terminate their interrogation of Appellant, Keith M. West, until he was allowed

to consult with an attorney pursuant to RCr 2.14. The order was appealed by the Commonwealth to the Court of Appeals, which held the order void. This Court granted West's motion for discretionary review to consider the scope of RCr 2.14.

The factual sequence leading to this appeal is simple. West had been picked up by the police for questioning in the course of a murder investigation on February 20, 1992. West was advised of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and chose to talk to the police. At the hearing held on February 21, 1992, it was stated for the record by the Assistant Commonwealth Attorney that West had waived his rights under *Miranda*. Shortly after West was taken into custody, a family member contacted the office of the Jefferson District Public Defender (hereinafter "Public Defender") requesting that it undertake to represent West regarding the murder investigation. The police refused to allow the Public Defender access to West. The Public Defender prepared an order and approached a circuit judge as he was standing at the escalator on the third floor of the Hall of Justice. The judge conducted an *ex parte* hearing on the order, which he then signed. The order provided that:

> The Court, being sufficiently advised, and having found that family members acting on behalf of Mr. Keith West have requested on his behalf that Mr. West be provided an attorney before any further questioning by Louisville Police Department regarding allegations of his being involved in a homicide(s),
>
> **IT IS HEREBY ORDERED,** pursuant to RCr 2.14(2), that officers of the Louisville Police Department shall cease questioning Mr. West until he is allowed access to an attorney from the Office of the Jefferson District Public Defender. Police officers shall allow Mr. West immediate, private access to an attorney forthwith. This order shall be effective upon signature.

Upon being presented with the order, the police ceased their interrogation and allowed West access to an attorney provided by the Public Defender. West then chose to cease talking to the police.

The Commonwealth's Attorney's office learned of the order that afternoon. It immediately sought to have the order set aside, which the circuit court declined to do. A hearing on the matter was set for the next day, February 21, 1992. At the hearing, the circuit court stood by its order asserting it had jurisdiction to issue the order, and that RCr 2.14 authorized another to request an attorney on behalf of an accused. No issue was raised at the hearing concerning whether West was "indigent" beyond the Public Defender's uncontradicted assertion that it had been formally appointed to represent West in another matter then pending. The appellate procedure noted above has brought the issue to this Court.

RCr 2.14 in its entirety provides as follows:

> (1) A person in custody shall have the right to make communications as soon as practicable for the purpose of securing the services of an attorney.
>
> (2) Any attorney-at-law entitled to practice in the courts of this Commonwealth shall be permitted, at the request of the person in custody or of some one acting in his behalf, to visit the person in custody.

At issue here is the proper construction of the rule, particularly the phrase "someone acting in his behalf." RCr 1.04 provides that the Rules of Criminal Procedure "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

The circuit judge made a finding in his order, and at the hearing requested by the Commonwealth's Attorney, that the Public Defender acted at the request of West's family in seeking access to the West. This finding is not subject to attack at this time. As a result, we are left with the legal issue of the proper scope of RCr 2.14.

 It has been argued that the circuit court lacked jurisdiction to enter its order. We disagree. While it is true that West had yet to be formally indicted, a circuit court's jurisdiction does not, strictly speaking, depend upon the filing of an indictment pursuant to RCr 6.02. Under our constitution and by statute, circuit courts have general juris-

diction. "The circuit courts of this Commonwealth shall have original jurisdiction of all justiciable causes not vested in some other court." Ky. Const. § 112(5); KRS 23A.010(1). Thus the initial relevant question is: Under these facts, was the circuit court presented with a circumstance that could be deemed to constitute a "justiciable cause?"

A justiciable cause or controversy can be said to be a "controversy in which a present and fixed claim of right is asserted against one who has an interest in contesting it. . . ." *Black's Law Dictionary*, 865 (6th ed. 1990). RCr 2.14 creates a right which inures to the benefit of a person in custody under certain conditions. Under the terms of the rule, an "attorney-at-law . . . shall be permitted, at the request of the person in custody or of some one acting in his behalf, to visit the person in custody." In this case, West had "claim of right" which was asserted by his family on his behalf (as the rule provides) against law enforcement agents who, no doubt, had "an interest in contesting it." Clearly there existed a justiciable cause sufficient to invoke the jurisdiction of the Jefferson Circuit Court under Section 112(5) of the Kentucky Constitution, as well as KRS 23A.010(1).[1]

■ The next issue concerns the authority of the Public Defender to act in this case. It has been argued that the Public Defender had no authority to act in this instance, because it had not been formally appointed. KRS Chapter 31, which governs the office of the public defender, in relevant part, provides as follows:

A needy person who is being detained by a law enforcement officer, *on suspicion*

*of having committed,* or who is under formal charge of having committed . . . a serious crime, is entitled:

(a) To be represented by an attorney to the same extent as a person having his own counsel is so entitled;

KRS 31.110(1) (emphasis added).

Thus, the statutory scheme which governs the conduct of public defenders contemplates representation prior to a formal charge of criminal wrongdoing and dovetails neatly with the rule which permits *"any attorney-at-law* entitled to practice in the courts of this Commonwealth" to visit the person in custody. RCr 2.14 (emphasis added). The most cogent evidence of the legislature's intention to adequately safeguard the rights of the indigent can be found in the particulars of KRS 31.120(1). The statute provides for representation at the "earliest necessary proceeding at which the person is entitled to counsel" and upon a simple "declaration by the person that he is needy under the terms of this chapter." In this vein, the statute creates a mechanism whereby reimbursement shall be made to the appropriate public advocacy agency should the defendant later be determined not to be "needy." KRS 31.150.

These provisions signal an unmistakable message that the intent of the legislature is *to provide meaningful, rather than nominal,* protection of the rights of the indigent. Thus, a public advocate's authority vests at the earliest point at which a person is entitled to counsel (i.e., custodial interrogation), but not until a claim, without further proof, is made of need for public assistance by the accused. This Court must interpret RCr 2.14 in a manner that is consistent with the legislature's intent.[2]

---

1. Thus, it is of no significance that an indictment had not issued which would formally vest jurisdiction in the circuit court. By virtue of its general jurisdiction, the circuit court frequently acts *ex parte* in criminal matters. A clear example of such an act is in the issuance of search warrants. RCr 13.10. Thus, it is clear that the duty of a circuit court to enforce the Constitution and law does not await a docket number.

2. The need and rationale for the rule are explained cogently in the unofficial Comment on the Rules of Criminal Procedure, which is based upon the reports of the Rules Committee, and provides as follows:

Subsection (1) of RCr 2.14 is new and is not common in the Codes of other states. However, it has been pointed out repeatedly that one charged with a crime needs counsel and assistance from the beginning. See *Crooker v. California*, 1958, 357 U.S. [433], 2 L.Ed.2d 1448, 78 S.Ct. 1287, quoting from 44 Ky.L.J. 103, 104 [Douglas, J., dissenting], as follows:

If at any time, from the time of his arrest to final determination of his guilt or innocence, an accused really needs the help of an attorney, it is in the pre-trial period. . . . Indeed, the pre-trial period is so full of hazards for the accused that, if unaided by competent legal

■ Another issue concerns whether the record indicates that West is a needy person, so as to trigger the Public Defender's authority. As noted, the only "evidence" is that West met that definition since he was represented by an attorney in the Public Defender's office in another matter then pending. Moreover, implicit in the trial court's order allowing the Public Defender to see West must be a finding that West was indigent. Based upon these factors, we conclude that there was sufficient proof of West's indigency to allow the Public Defender to represent him.

The language of RCr 2.14 is clear and unambiguous. Any attorney, private counsel, or public defender summoned by the person in custody or by someone acting in that person's behalf, *shall* be permitted to visit the person in custody. As noted by counsel during oral argument before this Court, the public defender's office is frequently contacted by law enforcement officers for assistance when one in custody invokes his or her *Miranda* rights during interrogation. The public defender responds, in keeping with his or her duty as defined in KRS 31.110. Just as clearly, however, the public defender is not authorized to monitor police station and jail comings-and-goings to offer his or her services to those who have been arrested.

Finally, the Commonwealth argues that *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), is controlling. In *Moran*, the United States Supreme Court refused to expand *Miranda* to require police to inform a suspect of the status of his legal representation. *Id.*, 475 U.S., at 427–28, 106 S.Ct., at 1144–45, 89 L.Ed.2d, at 425. Thus, there was no requirement that Burbine be informed that an attorney retained by his sister concerning a burglary investigation by the local police department had called when officers from another police department sought to question him concerning a murder. Consequently, the confessions by Burbine obtained during the questioning concerning the murder did not have to be suppressed because there was no violation of Burbine's right against self-incrimination under the Fifth Amendment to the U.S. Constitution.[3] *Id.* Based upon *Moran*, which the Commonwealth asserts is practically indistinguishable from the case before this Court, it is argued the police could not be required to interrupt their interrogation of West on February 20, 1992.[4]

However, *Moran* is not controlling. Our criminal rule predates that Supreme Court decision by twenty-four (24) years. Further, the *Moran* court specifically held that:

> Nothing we say disables the States from adopting different requirements for the conduct of its employees and officials as a matter of state law. We hold only that the Court of Appeals erred in construing the Fifth Amendment to the Federal Constitution to require the exclusion of respondent's three confessions.

*Id.*, 475 U.S. at 428, 106 S.Ct. at 1144, 89 L.Ed.2d at 425.

It is well-established that the United States Supreme Court's interpretation of what the federal constitution demands establishes only minimum federal constitutional guarantees, and that "this Court and other state courts are at liberty to interpret state constitutions to provide greater protection of individual rights than are mandated by the United States Constitution." *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684 (1993); *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575 (1975). RCr 2.14 provides additional protection by specifying that the attorney to which an accused

---

advice, he may lose any legitimate defense he may have long before he is arraigned and put on trial.

Subsection (2) also is new. It is supposed to be the practice now, but is sometimes disregarded.

RCr 2.14, Comment (1962).

**3.** *Moran* also analyzed issues relating to Burbine's right to counsel under the Sixth Amendment and the due process clause of the Fifth Amendment.

**4.** Although not of critical importance in view of our analysis, there are several factual distinctions of significance in this case. Notably, unlike *Moran*, the same police department is presumably involved in all investigations of West, and the Public Defender was retained for the purpose of representing West regarding the investigation at issue rather than for an unrelated case.

already has a right may be contacted on his behalf by a third party. Valid reasons exist for upholding RCr 2.14 and extending to the accused the protections provided therein.

The necessity and rationale for RCr 2.14 are aptly described in the unofficial Comment on the Rules of Criminal Procedure previously set forth. This rule was adopted to address the hazards faced by any unrepresented accused person, who "[i]f unaided by competent legal advice ... may lose any legitimate defense he may have long before he is arraigned and put on trial." The advent of the prophylactic safeguards embodied in *Miranda* echo the protections provided by only part of RCr 2.14, and thus, do not represent the "rich and compelling tradition of recognizing and protecting individual rights" that exists in Kentucky. *Commonwealth v. Wasson*, Ky., 842 S.W.2d 487, 492 (1993).

■ Further, there is no logical basis for distinguishing between an attorney requested by an accused and an attorney requested, as in this case, by a family member on behalf of the accused, with respect to any legitimate need on the part of law enforcement officials. If the accused does not wish to have representation, it can be refused, no matter who made the contact. We are also unpersuaded that this rule will be abused by "benign third persons." Whether or not the person attempting to invoke RCr 2.14 is an appropriate party is a question of fact for the trial court, guided by common sense, and a demonstration that the third party stands in a relationship to the accused such that a personal concern for the welfare of the accused is appropriate.

■ There are other issues raised by West on appeal that can be disposed summarily in view of our disposition of the case on the merits. First, West argues that the appeal is moot because the circuit court's *ex parte* order has been implemented, and cannot be undone. While there is some truth in what West argues, it does not render the appeal moot. Notably, a case can still be subject to appellate review, even if technically moot, where it is " 'capable of repetition, yet evading review.' " *Philpot v. Patton*, Ky., 837 S.W.2d 491, 493 (1992). "The decision whether to apply the exception to the moot-

ness doctrine basically involves two questions: whether (1) the 'challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and [2] there is a reasonable expectation that same complaining party would be subject to the same action again.' " *Id.* (Citation omitted). This case clearly demonstrates that the question of access under RCr 2.14 is one too short to be fully litigated prior to completion. Additionally, there is a reasonable expectation that the situation could be repeated. Therefore, we conclude that the case is not moot.

West also argues about whether certain items are properly in the record. We need not reach this issue since West has prevailed on the merits.

Finally, it is also argued that it was improper for the Commonwealth's Attorney to represent the Louisville Police Department prior to indictment. This, too, is an issue we need not reach in light of our decision on the merits.

For the reasons set forth above, we reverse the decision of the Court of Appeals.

STEPHENS, C.J., and LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, in which REYNOLDS and SPAIN, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent. The tensions in this case arise from RCr 2.14 which provides in part that any attorney is entitled, at the request of a person in custody, or someone acting in his behalf, to visit the person in custody, balanced against the authority of the police to continue lawful questioning without interruption by public defenders when the person questioned has waived his right to counsel. A number of procedural questions are also raised by the method and manner in which this case comes to this Court.

The Louisville police took West into custody for questioning in regard to a double murder. He was advised of his constitutional rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He chose to waive his rights and speak directly with police. Although the ex-

act facts are somewhat in dispute, the public defender's office came into contact with members of West's family, and it was maintained that the family wanted West to have an attorney before further questioning by the police. After police refused to allow the public defenders to interrupt the interrogation or otherwise to visit West, members of the public defender's office prepared an order and approached a circuit judge as he was standing at the escalator at the top of the third floor of the Hall of Justice. The judge conducted an ex parte hearing on the order which he then signed providing immediate access to West by the public defender's office. Although the circuit judge signed the order, there is no showing as to whether it was ever "entered" by the circuit clerk. Evidently, the order was presented to police who complied by terminating questioning. Later that afternoon, the Commonwealth's Attorney's office learned of the order and asked the circuit court to set it aside because it was in conflict with the principles of *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The circuit judge declined to set aside the order but set a hearing for the next day. At the hearing, the judge stated for the video record that he had jurisdiction to rule on the issue and that RCr 2.14 allows another person to request an attorney to talk to a defendant before further questioning.

RCr 2.14(2) provides in pertinent part that any attorney at law shall be permitted, at the request of the person in custody, or someone acting in his behalf, to visit the person in custody. No further written orders were executed by the circuit judge and West was indicted for murder four days later.

The Commonwealth appealed from the order of February 20, and a panel of the Court of Appeals determined that the order was void because *Moran, supra,* controlled. Initially, it should be noted that the order issued by the Jefferson Circuit Court directing the police to end the questioning of West was void because the court lacked jurisdiction over the matter. At the time the order was executed, there was no criminal or civil action involving West pending in the circuit court. It was not until February 24, that West was indicted.

A criminal action in circuit court is begun by the filing of an indictment, RCr 6.02, and a civil action is commenced by the filing of a complaint or petition, CR 3. In the absence of either of these events, there was no case or controversy which the circuit court could decide and no valid order which could issue. The order was void and should have been vacated.

It was procedurally improper for the circuit judge to have issued the order because the office of the public defender had not yet been appointed by any court to represent West and there was no reported claim by West of indigence as required by KRS 31.120. Consequently, the public defender had no authority to represent West at the time of the visit.

In addition, the order violates the holding of *Moran* which determined in part that Miranda rights are personal to the accused and that society, as well as the accused, has an interest in preventing benign third parties from invoking such rights.

The next question we must face is whether despite the absence of jurisdiction of the circuit court and the lack of authority to appoint the office of public defender to represent West, the circuit court order was a final and appealable order. There is no conflict between the duties of the Commonwealth's Attorney as provided in KRS 15.725 and 22A.020(4) and the responsibilities of the Louisville Director of Law under city ordinance 34.080(A). In any event, if the ordinance were found to be in conflict with KRS 15.725, the statute would control. *Boyle v. Campbell,* Ky., 450 S.W.2d 265 (1970). An order which prohibits or interferes with the lawful collection of evidence is interlocutory. *Eaton v. Commonwealth,* Ky., 562 S.W.2d 637 (1978). KRS 22A.020 provides that the Commonwealth may take an appeal in this type of situation.

RCr 2.14 was adopted as part of the criminal rules in 1962, four years before *Miranda* was decided, and fourteen years before *Moran* was rendered.

This Court has stated that on matters of constitutional law, Kentucky will give great consideration to the rulings and analysis of the U.S. Supreme Court as part of its own

analysis of the meaning of the Kentucky Constitution. *Crayton v. Commonwealth,* Ky., 846 S.W.2d 684 (1992). *Moran* also noted that its ruling did not bind the states. "Nothing we say today disables the states from adopting different requirements for the conduct of its employees and officials as a matter of state law." The plain language of the rule is simple. Any attorney summoned by a person in custody or by someone acting in that person's behalf shall be permitted to visit the person in custody. There is no time limitation stated in the rule. Originally, the ALI Model rule from which our rule was fashioned, did provide that such representation be made immediately. The purpose of the rule is to permit the person held in custody to obtain legal counsel, and to prevent the police from holding a defendant incommunicado. Clearly that problem was handled by *Miranda* some four years after the adoption of the Kentucky rule. There is no need to resurrect the references to a practice of "sweating" a suspect which is already denounced by KRS 422.110. RCr 2.14 may well have been intended as a supplement to the "anti-sweating" law, as well as a supplement to KRS 422.110(1). This case does not involve a construction of those statutes or rules.

The facts clearly indicate the only conclusion possible. When first taken to the police station for custody, West was advised of his constitutional rights in accordance with *Miranda.* He waived those rights and chose to talk to police about the incident. At that point, the police were perfectly free to continue to question the individual. It was only later that the public defender appeared with a court order which required the police to cease further questioning. They did so at once.

The orderly course of events would be totally disrupted if such a situation were allowed to continue in Jefferson Circuit Court or in any other circuit court of the Commonwealth. The police would never know when they were to begin or end questioning and who represented the defendant or the person in custody. The procedural shortcomings of this case highlight the fact that the statutes provide for a hearing on indigence and then the appointment of counsel. None of these events can properly be conducted at the top of an escalator in a busy courthouse. The order prepared by the public defenders did not include any reference to indigence or to the appointment of a defender. There is no evidence of any incompetency on the part of West.

*Moran* was a Federal case with nearly identical facts to this case in which the U.S. Supreme Court specifically rejected a request to extend *Miranda* so as to require the police to inform a suspect of the efforts of an attorney to reach him during questioning.

From a historic point of view, RCr 2.14 was adopted as an apparent response to the decision of the U.S. Supreme Court in *Crooker v. California,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). The suspect in *Crooker* was arrested by Los Angeles police and questioned on five separate occasions about the murder. He asked for an attorney during three of those questionings. He was not allowed to use the phone to call a lawyer until he had given a full confession. The 5 to 4 majority of the U.S. Supreme Court refused to adopt a rule which would preclude police questioning until the accused is given an opportunity to call his lawyer. The minority justices would have held that the due process clause dictates that the accused who wants counsel should have one at any time after the moment of arrest. Kentucky joined the *Crooker* minority in adopting RCr 2.14 in 1962. Four years later, in the *Miranda* decision, the U.S. Supreme Court expressly overruled *Crooker* and struck a balance between the competing interests of the individual in custody and the government in those instances where the police subject an individual to custodial questioning. The court recognized the inherently coercive nature of a custodial interrogation and balanced that concept with the matter of confessions as a proper element in law enforcement.

*Miranda* reaches the result which was sought by RCr 2.14, that is, to allow the accused, or those in custody, to consult with counsel upon their request unless waived. Upon such a request, the duty is squarely upon the police to arrange for such a consultation and to refrain from questioning. The individual's right to an attorney is fully protected under *Miranda,* and RCr 2.14 is no

longer necessary in the context of custodial interrogations. In this case, at 10:18 a.m. on February 20, 1992, West signed a waiver form acknowledging he understood that he had a right to counsel and to have an attorney present during questioning and that he desired to waive those rights. West waived his Fifth Amendment right to counsel and spoke to police before the circuit court order was signed. After the order was signed, West was arrested. He again waived his Fifth Amendment right to counsel and confessed to the crime.

I would affirm the decision of the Court of Appeals.

REYNOLDS and SPAIN, JJ., join in this dissent.