COMMONWEALTH of Kentucky,
Appellant

v.

Samuel TERRELL, Appellee

2012–SC–000550–DG

Supreme Court of Kentucky.

RENDERED: APRIL 2, 2015

Rehearing Denied August 20, 2015

COUNSEL FOR APPELLANT: Jack Conway, Attorney General of Kentucky, Heather Michelle Fryman, Assistant Attorney General.

COUNSEL FOR APPELLEE: Jason Apollo Hart, Assistant Public Advocate.

## OPINION OF THE COURT BY
## CHIEF JUSTICE MINTON

Police took Samuel Terrell into custody to question him while investigating his mother's murder, but a circuit court order halted the questioning until Terrell was allowed access to a public defender. Terrell's father procured this order from the circuit judge, ex parte, purportedly under the authority of Kentucky Rule of Criminal Procedure (RCr) 2.14(2). The Commonwealth appealed the order; and the Court of Appeals affirmed the circuit court's issuance of the order based on our interpretation of RCr 2.14(2) in West v. Commonwealth,[1] which held that courts had the authority to interrupt police interrogations and to mandate the accused's access to an attorney at the request of a benevolent third party. We granted the Commonwealth's motion for discretionary review.

Reversing the opinion of the Court of Appeals, we retreat from the broad holding in West by rejecting the notion that RCr 2.14(2) somehow allows a trial courts to exercise its constitutional authority to intervene pre-prosecution to enjoin police from questioning a suspect. Instead, we hold that except for constitutionally mandated authority to issue search warrants, courts are not vested with general jurisdiction over a criminal matter until the criminal matter becomes a criminal case upon commencement of prosecution. We agree with West in the general sense that an accused has a right to an attorney during an interrogation and RCr 2.14(2) guarantees attorneys be given access to their clients in custody, but we do not read RCr 2.14(2) as a vehicle for the appointment of an attorney or interference by the judicial branch in pre-prosecution criminal investigations. Finally, we hold that a motion to suppress is the appropriate weapon to attack an allegedly improper interrogation resulting from the denial of access to counsel. Accordingly, we reverse the opinion of the Court of Appeals and vacate the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The record on appeal is sparse. There is a great deal we do not know from the

---

1. 887 S.W.2d 338 (Ky. 1994).

record about Terrell's arrest, his subsequent interrogation, and the trial court's order stopping the interrogation. But what we do know is that Terrell's mother's dead body was found in a pool of blood in the early morning hours of May 13, 2011, on the floor of her apartment, the apparent victim of a shooting. When first-responders arrived at the apartment, Terrell and his brother were there.

Three witnesses, including Terrell's brother and sister and an acquaintance, informed police that Terrell had been at the apartment late on the evening of May 12. Terrell's brother further informed police that at approximately 2:30 a.m., Terrell arrived at his apartment and informed him "someone" had hurt their mother. The acquaintance told police that she, along with others, dropped Terrell off at his mother's apartment—where he also resided—around 1:45 a.m. Terrell's sister described a contentious relationship between Terrell and his mother.

The exact time is unknown, but at some point on the morning of May 13, police arrested Terrell as a suspect. Based on the information mentioned above, at 6:13 a.m., police obtained a search warrant for Terrell's person and his apartment. The search warrant included authorization to search "[a]ll clothing worn by Samuel Jay Terrell at the time he was taken into custody." Because of this skeletal information in the record, we are forced to assume Terrell was taken into custody sometime between 2:30 a.m. and 6:13 a.m. The record is silent from the issuance of the search warrant until 12:35 p.m., the time we assume the circuit judge wrote as he signed the order that was entered by the circuit clerk directing that "officers shall cease all questioning of Samuel Terrell[ ] until he is allowed access to an attorney from the Public Defenders [sic] Office."

By the terms of the order and the recitation of facts by both parties, Terrell's father approached the circuit judge, ex parte, and obtained the order.

The record does not disclose whether interrogation had begun at the time of the order; what Terrell said to police, if anything; whether he was Mirandized; or whether he waived his right to counsel. In its statement of the case, the Commonwealth states that Terrell "did not request counsel" and "[a]t the time of the Order, Terrell had not requested an attorney[.]" But these assertions, while perhaps accurate, are not supported anywhere in the record.

Curiously, we are presented with no evidence that Terrell was ever actually represented by the public defender as the order directs. At his arraignment on May 18, the record shows Terrell represented by private counsel. Perhaps even more curiously, the notice of appeal lists both the private attorney and the Office of Public Advocacy for purposes of Certification of Service.

## II. ANALYSIS.

### A. The Commonwealth's Appeal is Moot; but the Issue Presented is Capable of Repetition, yet Evading Review, so our Review is Appropriate.

Before considering the merits of this case, we must first determine whether this case is moot. A case becomes moot as a result of a change in circumstances "which vitiates the underlying vitality of the action."[2] In such an action, a judgment "when rendered, for any reason, cannot have any practical legal effect upon a

---

**2.** *Commonwealth v. Hughes*, 873 S.W.2d 828, 830 (Ky. 1994).

*then* existing controversy." [3] This Court, of course, does not have authority to settle "arguments or differences of opinion[.]" [4] As we often say, we do not render purely advisory opinions.

■ Indisputably, this case is moot. The parties agree that it is. Granting the relief sought by the Commonwealth will have no practical effect on Terrell's prosecution. In fact, the Commonwealth is required by statute to continue with its prosecution when appealing a trial court's interlocutory order. [5] And the Commonwealth alleges no injury from the cessation of Terrell's interrogation aside from the simple erroneous nature of the trial court's order.

■ Although dismissal of the appeal is the traditional approach when faced with a moot case, this rule, like most rules, has exceptions. The various exceptions to the mootness doctrine enable this Court, despite the absence of an actual case or controversy, to review the merits of the action. [6] Particularly relevant here is the recognized exception for "cases which, although moot, concern alleged injuries or violations which are 'capable of repetition, yet evading review.'" [7] This exception involves two elements: "(1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subject to the same action again." [8]

■ This case satisfies the exception and is appropriate for our review. As mentioned previously, the Commonwealth is statutorily required to continue with its prosecution when it decides to appeal an interlocutory order. This effectively guarantees that the Commonwealth's claim will always be moot before reaching this Court. Furthermore, given the Commonwealth's sole authority to prosecute criminal cases, it is beyond dispute that a reasonable expectation exists that the Commonwealth—the complaining party—may be subject to this same action again. Despite its mootness, this case plainly falls within the capable-of-repetition-yet-evading-review exception. Accordingly, we reach the merits of the Commonwealth's appeal.

## B. RCr 2.14(2) Only Provides a Right for Counsel to Visit. The Trial Court is Without Authority to Appoint Counsel and Stop Interrogation.

The text of RCr 2.14(2) reads as follows: "Any attorney at law entitled to practice in the courts of this Commonwealth shall be permitted, at the request of the person in custody or of [someone] acting in that person's behalf, to visit the person in custody." The rule, based on Section 37 from the American Law Institute's now-defunct Model Rules of Criminal Procedure, went

3. *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1042 (1921) (quotation marks omitted).

4. *Veith v. City of Louisville*, 355 S.W.2d 295, 298 (Ky. 1962).

5. *See* Kentucky Revised Statutes (KRS) 22A.020(4) ("An appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the Circuit Court, but only under the following conditions: (a) Such appeal shall not suspend the proceedings in the case.").

6. For an in-depth discussion of these exceptions, see *Morgan v. Getter*, 441 S.W.3d 94, 98–103 (Ky. 2014).

7. *Morgan*, 441 S.W.3d at 100 (quoting *Lexington Herald–Leader Co., Inc. v. Meigs*, 660 S.W.2d 658 (Ky. 1983)).

8. *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992) (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 293 (6th Cir. 1988)).

into effect in 1963. Over the course of its existence, despite two amendments, the rule has changed little, with the only notable changes being: (1) "arrested" to "in custody"; and (2) "be permitted" shifting locations. The Commentary associated with its adoption described the rule as current practice but "sometimes disregarded."

Any discussion of case law interpreting RCr 2.14(2) begins and ends with *West v. Commonwealth.* Rendered twenty years ago, *West*—despite its sweeping proclamation—has generated neither great discussion nor citation. *West*'s facts are virtually indistinguishable from those of the instant case.

*West* was "picked up by the police for questioning in the course of a murder investigation" and "advised of his constitutional rights pursuant to *Miranda [.]*"[9] West chose to waive his right to counsel and continue talking to police. A short time after West was taken into custody, "a family member contacted the office of the Jefferson District Public Defender"[10] and requested representation for West in the ongoing murder investigation. But the police refused access to West's public defender. So the attorney who had attempted to visit West "prepared an order and approached a circuit judge as he was standing at the escalator on the third floor of the [Jefferson County] Hall of Justice."[11] An ex parte discussion ensued, and the judge then signed the order. The order read:

> The Court, being sufficiently advised, and having found that family members acting on behalf of Mr. Keith West have requested on his behalf that Mr. West be provided an attorney before any further questioning by Louisville Police Department regarding allegations of his being involved in a homicide(s),
>
> IT IS HEREBY ORDERED, pursuant to RCr 2.14(2), that officers of the Louisville Police Department shall cease questioning Mr. West until he is allowed access to an attorney from the Office of the Jefferson District Public Defender. Police officers shall allow Mr. West immediate, private access to an attorney forthwith. This order shall be effective upon signature.[12]

Upon receipt of the order, the police stopped interrogating West and allowed West access to counsel. After conferring with counsel, West decided to stop talking with police. At this point, the facts in *West* diverge slightly from the instant facts but not in a material way. The Commonwealth, in *West*, immediately filed a motion with the circuit court to have its order ceasing interrogation vacated. The circuit court denied the Commonwealth's motion, and the issue was appealed to the Court of Appeals and finally to this Court.

 Initially, the *West* Court had to resolve whether the circuit court even had jurisdiction to issue the order in the first place. The Court rejected the argument that the circuit court only acquired jurisdiction on the issuance of an indictment. Rather, the Court relied on the general jurisdiction conferred on circuit courts through Section 112(5) of the Kentucky Constitution, which reads: "The circuit courts of this Commonwealth shall have original jurisdiction of all justiciable causes not vested in some other court." Liberally applying the legal definition of *justiciable cause*—controversy in which a present and fixed claim of right is asserted against one

9. *West*, 887 S.W.2d at 339.

10. *Id.*

11. *Id.*

12. *Id.*

who has an interest in contesting it—the *West* Court found RCr 2.14(2) created a right "which 'inure[d] to the benefit of a person in custody under certain conditions ... against law enforcement agents who, no doubt, had an interest in contesting it." [13] Accordingly, the *West* Court concluded "there existed a justiciable cause sufficient to invoke the jurisdiction of the Jefferson Circuit Court under Section 112(5) of the Kentucky Constitution[,] as well as KRS 22A.010(1)." [14] We cannot agree with the conclusion reached by the *West* Court. The more sound approach, in our opinion, despite its rejection by the *West* Court, is that jurisdiction to deal with the matters covered by RCr 2.14(2) does not vest in any court until prosecution of the accused begins in the court system. Prosecution of the accused begins in the court system with the issuance of criminal process in the form of a criminal citation,[15] arrest warrant,[16] criminal summons,[17] or by the return of an indictment by a grand jury or by criminal information. The investigation of crimes is a function of the executive branch; and before prosecution of the accused reaches the courts, courts lack general jurisdiction to intercede via RCr 2.14(2) in the investigation of the accused.[18] We can appreciate the *West* Court's attempt to give weight to "justiciable cause"; but today's approach is more consistent with this Commonwealth's historical understanding of criminal jurisdiction, and it is more practical.

■ The precedential value of *West* is not lost on this Court, but we are "not assigned the duty of maintaining the watch as the law ossifies." [19] At times, through proper analysis, sound jurisprudence mandates we refuse to "unquestioningly follow prior decisions." [20] To the extent *West* stands for the proposition that courts have the authority to intervene pre-prosecution in police interrogations of suspects via RCr 2.14(2), it is overruled.

■ The question now remains how RCr 2.14(2) operates stripped of the authority given to courts by *West*. The answer, when reviewing the actual text of the rule, is quite simple. RCr 2.14(2) provides an individual with *access* to an attorney—nothing more, nothing less. It could be accurately described as a visitation rule that prevents an attorney from being barred from meeting with the attorney's client. The rule does *not*, as the Commonwealth would have us believe, foist counsel on the individual in custody. Instead, the rule proclaims the end of the era where, in the famous words of the Illinois Supreme Court, "attorneys must shout legal advice to their clients, held in custody, through the jailhouse door." [21] In order to comply with RCr 2.14(2), when an attorney arrives at the place where the individual is detained, the officers *must* allow the attorney

---

13. *Id.* at 341 (internal quotations omitted).

14. *Id.*

15. KRS 431.015(1).

16. RCr 2.04(1).

17. KRS 431.410; RCr 2.04(1).

18. In the issuance of search warrants, courts have constitutionally mandated jurisdiction before prosecution commences. Likewise, our Opinion today in no way limits the judiciary's writ authority flowing from the Kentucky Constitution. *See* Ky. Const. §§ 110(2), 111(2).

19. *Osborne v. Keeney,* 399 S.W.3d 1, 17 (Ky. 2012).

20. *Chestnut v. Commonwealth,* 250 S.W.3d 288, 295 (Ky. 2008).

21. *People v. McCauley,* 163 Ill.2d 414, 206 Ill.Dec. 671, 645 N.E.2d 923, 929 (1994).

to visit privately with the individual.[22]

The appointment of counsel for the individual in custody is not a role for the court until prosecution commences. But if the individual in custody wishes to have counsel during custodial interrogation, he may either request an attorney or, under RCr 2.14(1), contact an attorney. Illustrated by both the instant case and *West*, the individual's family also may contact an attorney and request representation on behalf of the individual in custody. But the constitutional right to counsel is a *personal* right. So the individual in custody retains control and may wish to refuse the attorney and continue talking with police.[23] This interpretation respects the "lifeblood of the law"[24]—the individual—and avoids the ever-maligned situation where an individual is imprisoned in his privileges.[25] Perhaps because of RCr 2.14(2), it will be more likely that an individual will exercise his right to counsel since, after all, "[t]o pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to

provide at least initial assistance and advice, whatever might be arranged in the long run."[26] But that is the individual's prerogative.

Our decision today should not be construed to conflate RCr 2.14(2) and an individual's constitutional right to counsel.[27] RCr 2.14(2) differs in key ways from the constitutional right to counsel. It is important to remember what an individual is entitled to when he exercises his right to counsel. Of course, interrogation must cease; but, more importantly, if the defendant cannot afford an attorney, one will be provided. Here, however, the trial court was wholly without the authority to appoint counsel for Terrell. RCr 2.14(2) provides no mechanism for appointing counsel.

Additionally, an individual's constitutional right to counsel does not encompass his knowing that his attorney is attempting to reach him or even that his family has retained an attorney for him. RCr 2.14(2) operates in response to this by providing some relief in circumstances such as those at issue in *Moran v. Bur-*

22. Simply making a telephone call to the police station is not enough to effectuate RCr 2.14(2). The attorney must be denied *access* to the defendant for RCr 2.14(2) to be violated. Consistent with this Court's interpretive methodologies, this applies the common usage of "visit" found in RCr 2.14(2).

23. As would be the case with an individual's purported *Miranda* waiver, the Commonwealth bears the burden of proving the individual voluntarily declined legal representation and continued the interrogation. And we should emphasize today's holding does not—perhaps more accurately, cannot—alter the requirement that an individual be informed of *Miranda* rights upon being taken into custody. Police may begin interrogating the individual if he agrees to speak. RCr 2.14(2) springs into action when an attorney arrives.

24. *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

25. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

26. *State v. Haynes*, 288 Or. 59, 602 P.2d 272, 278 (1979).

27. In using "constitutional" here, we refer to both the United States Constitution and Kentucky Constitution. Our case law is clear that our Fifth Amendment analog—Section 11—has been interpreted congruently. *See Commonwealth v. Cooper*, 899 S.W.2d 75, 77–78 (Ky. 1995). Additionally, given our instant focus on interrogation and the pre-indictment context, "right to counsel" refers to the right to have counsel present during questioning as protection of the Fifth Amendment right to silence, not the Sixth Amendment right to have counsel at all critical stages of a criminal proceeding.

*bine.*[28] In *Moran,* an accused's attorney telephoned the police station and was purposely misled about the status of the accused's interrogation. Moran challenged this conduct on the grounds that it violated his Fifth Amendment right of freedom from compulsory self-incrimination—more accurately, his access to counsel to protect that right as explained in *Miranda v. Arizona.*[29] Notably, the Court held the conduct of the police did not violate Moran's constitutional rights, specifically pointing out that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right."[30]

In the end, we feel it important to highlight that our approach today is not novel when compared to the jurisprudence of our sister jurisdictions[31] and to their rules of criminal procedure.[32] Finally, we need not reach the Commonwealth's argument that a trial court is unable to appoint an attorney from the public advocate's office without first finding the defendant indigent because we find the trial court does not have the authority to appoint counsel and cease interrogation at all.

Having found that RCr 2.14(2) does not somehow provide the trial court with authority to appoint counsel and intercede in the interrogation of an individual in custody before commencement of prosecution, we believe it appropriate to provide guidance as how properly to remedy a violation of the rule. Of course, with little exception, a violation of a rule of criminal procedure would normally be dealt with through our harmless error analysis.[33] But we recognized recently that the exclusionary rule may be appropriate in certain circumstances for violations of our criminal procedure rules.[34] Depending on the circumstances, then, any information gained from the point an attorney is denied access to an individual in custody in violation of RCr 2.14(2) is perhaps excludable from trial.[35] We believe this may be the most appropriate way to monitor the rights of the individual as granted by RCr 2.14(2) while honoring the respective parameters of judicial and executive authority.

## III. CONCLUSION.

RCr 2.14(2) acts as a barrier to police preventing an attorney from accessing his client. It does not, however, operate as a method for a trial court to both end interrogation and appoint counsel for an individual. The purpose of RCr 2.14(2), instead, is simply to prevent police from interrogating an individual while his attorney attempts to reach him and potentially advise him. We reiterate that the rule is not a statutory right to counsel, analogous to an individual's constitutional right to counsel. The rule only provides *access* to counsel but does not require that the individual *accept* counsel. The individual is in

28. 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

29. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

30. *Moran,* 475 U.S. at 422, 106 S.Ct. 1135.

31. *See, e.g., Commonwealth v. Mavredakis,* 430 Mass. 848, 725 N.E.2d 169 (2000).

32. *See, e.g.,* Ohio R.C. § 2935.20.

33. *See, e.g., Brewer v. Commonwealth,* 206 S.W.3d 313, 321 (Ky. 2006).

34. *See Copley v. Commonwealth,* 361 S.W.3d 902 (Ky. 2012).

35. The full panoply of remedies within a trial court's authority is available if a violation of RCr 2.14(2) occurs following the commencement of prosecution in court. We offer no suggestion on what is appropriate because that will vary with the circumstances.

full control of his right to counsel by either exercising his right by accepting the counsel's representation or denying the aid of counsel and thereby waiving his right. Accordingly, the opinion of the Court of Appeals is reversed; and the order of the circuit court is vacated.

All sitting. Abramson, Barber, Cunningham, Noble, and Venters, JJ., concur. Keller, J., dissents by separate opinion.

### KELLER, J., DISSENTING:

The majority states that "the jurisdiction to deal with the matters covered by RCr 2.14(2) does not vest in any court until prosecution of the accused begins in the court system. Prosecution of the accused begins in the court system with the issuance of criminal process in the form of a criminal citation, arrest warrant, criminal summons, or by the return of an indictment by a grand jury or by criminal information." I disagree. Circuit courts have "original jurisdiction of all justiciable causes." Ky. Const. § 112(5). A justiciable cause is "a 'controversy in which a present and fixed claim of right is asserted against one who has an interest in contesting it.'" *West v. Commonwealth*, 887 S.W.2d at 341. Certainly, as the *West* Court noted, a justiciable cause exists when a person or his family asserts a "'claim of right' ... against law enforcement agents who, no doubt, had 'an interest in contesting it.'" *Id.* In this case, Terrell's father asserted a right under RCr 2.14 and *West*, which the Commonwealth has contested. Therefore, a justiciable cause existed and the circuit court had jurisdiction to resolve it; thus negating the Commonwealth's separation of powers argument.

Second, I believe that one of the primary functions of the courts is to ensure that individual rights are not violated. As Justice Douglas noted in his dissent in

*Crooker v. State of Cal.*, 357 U.S. 433, 445–46, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958), *abrogated by Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and as set forth in the commentary to RCr 2.14:

> If at any time, from the time of his arrest to final determination of his guilt or innocence, an accused really needs the help of an attorney, it is in the pretrial period.... Indeed, the pre-trial period is so full of hazards for the accused that, if unaided by competent legal advice, he may lose any legitimate defense he may have long before he is arraigned and put on trial.

If the court cannot intervene to protect a constitutional right at this most critical stage, then the right has no meaning. I recognize and agree with the majority's statement that, generally speaking, the right to counsel is a personal right. However, by adopting RCr 2.14, we have extended the ability to exercise that right, at least initially, to someone acting on behalf of a person in custody.

As the majority notes, RCr 2.14 has been in effect for more than fifty years, and *West* was decided more than twenty years ago. If the right set forth in RCr 2.14 as interpreted by this Court in *West* is to have any meaning, it must be enforceable. The majority states that, if police violate a person's right under RCr 2.14, the proper means of redress is through application of the exclusionary rule. Certainly, that is a method for redressing such a violation; however, the fact that there is a post-violation method of redress does not preclude the court from taking prophylactic action to prevent the violation. In fact, courts do this every day, and I believe that the method developed in *West* is a better means of enforcement than exclusion of evidence.

The majority states that RCr 2.14(2) does not create a "method for a trial court

to ... appoint counsel·for an individual." If a trial court cannot appoint an attorney under the auspices of RCr 2.14(2), then RCr 2.14(2) applies only to those who can afford private counsel. As this Court noted in *West*, the provisions of KRS 31.150 "signal an unmistakable message that the intent of the legislature is to provide meaningful, rather than nominal, protection of the rights of the indigent." 887 S.W.2d at 341. The majority's interpretation of RCr 2.14(2) ignores that message and forecloses the indigent from exercising the right created in RCr 2.14(2).

Finally, I note, as does the majority, that there is very little of substance in the record before us. I recognize we should not support erroneous opinions out of a slavish adherence to the concept of *stare decisis;* however, I also believe that we should not overrule longstanding precedent with little to no idea of what occurred below. In particular, I do not believe we should overrule *West* when, as the majority notes, "the Commonwealth alleges no injury from the cessation of Terrell's interrogation ...."