RENDERED:  JUNE 16, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0473-DG

ALEXANDER BLOYER                                       APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0890
HART CIRCUIT COURT NO. 14-CR-00078

COMMONWEALTH OF KENTUCKY                      APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

The Court of Appeals affirmed a decision of the Hart Circuit Court denying Alexander Bloyer's motion seeking reconsideration of probation pursuant to KRS[1] 640.075(4).  We granted discretionary review.  The sole question presented is whether the provisions of KRS 532.045 apply to render a juvenile convicted as a youthful offender of sexual offenses ineligible for probation.

When he was fifteen years old, Bloyer was transferred to Hart Circuit Court as a youthful offender after being charged with multiple sex crimes committed against his younger siblings.  He ultimately entered a guilty plea to rape in the first degree, two counts of sexual abuse in the first degree (victim

---

[1] Kentucky Revised Statutes.

under twelve), five counts of sodomy in the first degree, and six counts of incest. He received an aggregate sentence of fifteen years' imprisonment and was committed to the Department of Juvenile Justice (DJJ) until his eighteenth birthday.

As required by KRS 640.030(2), Bloyer returned to the Circuit Court for an age-eighteen hearing. Because he was still in the process of working through his treatment program, DJJ recommended Bloyer remain in its care and custody to permit time for completion of further treatment. The trial court ordered Bloyer to remain in DJJ custody to finish his program and set the matter for review. Approximately four months later, Bloyer—now aged eighteen years and four months—returned to the trial court. Although he filed a motion requesting to be probated, it was admitted "there was no place for him to go" as no placement location had been identified and Bloyer was not, in fact, seeking to be probated. Instead, the thrust of Bloyer's argument was seeking permission to remain with DJJ, this time until he turned 21 as permitted under KRS 640.075(1), rather than being transferred to the Department of Corrections. Once again, the trial court ordered Bloyer to continue treatment with DJJ and set an "adult sentencing" hearing closer to Bloyer's twenty-first birthday.

Shortly before he turned twenty-one, Bloyer filed a motion to reconsider probation pursuant to KRS 640.075(4). On March 5, 2019, the trial court conducted a nearly three-hour evidentiary hearing on the motion, taking testimony from several witnesses. In a written order entered several weeks

2

later, the trial court denied Bloyer's motion upon determining the provisions of KRS 532.045(2) prohibited Bloyer from being probated. KRS 532.045 states, in relevant part:

(1) As used in this section:

(a) "Position of authority" means but is not limited to the position occupied by a biological parent, adoptive parent, stepparent, foster parent, relative, household member, adult youth leader, recreational staff, or volunteer who is an adult, adult athletic manager, adult coach, teacher, classified school employee, certified school employee, counselor, staff, or volunteer for either a residential treatment facility or a detention facility as defined in KRS 520.010(4), staff or volunteer with a youth services organization, religious leader, health-care provider, or employer;

(b) "Position of special trust" means a position occupied by a person in a position of authority who by reason of that position is able to exercise undue influence over the minor; and

(c) "Substantial sexual conduct" means penetration of the vagina or rectum by the penis of the offender or the victim, by any foreign object; oral copulation; or masturbation of either the minor or the offender.

(2) Notwithstanding other provisions of applicable law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provision of this section be stricken for a person convicted of violating KRS 510.050, 510.080, 529.040, 529.070, 529.100 where the offense involves commercial sexual activity, 530.020, 531.310, 531.320, or 531.370, or criminal attempt to commit any of these offenses under KRS 506.010, and, who meets one (1) or more of the following criteria:

. . . .

(h) A person who in committing any of the offenses enumerated in this subsection has substantial sexual conduct with a minor under the age of fourteen (14) years; or

3

(i) A person who occupies a position of special trust and commits an act of substantial sexual conduct.

The trial court concluded Bloyer had been convicted of incest (KRS 530.020) against his relatives who resided in the same household and the victims were under fourteen years of age, thereby bringing him under the purview of KRS 532.045 and rendering him ineligible for probation. The trial court also concluded KRS 640.040 does not exempt youthful offenders from application of KRS 532.045. Bloyer appealed to the Court of Appeals.

The Court of Appeals affirmed the trial court, borrowing heavily from our decision in *Commonwealth v. Taylor*, 945 S.W.2d 420 (Ky. 1997), which concluded KRS 532.045(2) applied to youthful offenders. Noting the statutory language had remained unchanged in the two and a half decades following *Taylor*, the Court of Appeals held the General Assembly implicitly agreed with our interpretation. In addition, the panel found that while KRS 640.040 contained exemptions for youthful offenders from the limitations of KRS 532.080 (persistent felony offender sentencing) and KRS 533.060 (use of firearms, commission of felonies while on probation, parole, awaiting trial, etc.), there was absolutely no language exempting youthful offenders from the application of KRS 532.045. Thus, the Court of Appeals found the legislature had made clear that certain sexual offenders should be ineligible for probation, regardless of the offender's age at the time of commission of the crime. The panel rejected Bloyer's contention our holdings in *Commonwealth v. Merriman*, 265 S.W.3d 196 (Ky. 2008), and *Britt v. Commonwealth*, 965 S.W.2d 147 (Ky.

4

1998), should be read as *sub silentio* overruling *Taylor* and requiring an expansive reading of the ameliorative provisions of KRS 640.030. However, noting a potential disconnect in logic between *Taylor* and *Merriman*, the Court of Appeals signaled its desire for this Court to address the issue and definitively resolve any conflict. Finally, the Court of Appeals concluded Bloyer's constitutional arguments under the Eighth Amendment to the United States Constitution and Sections Two and Eleven of the Kentucky Constitution were without merit. We granted discretionary review.

Before this Court, Bloyer contends youthful offenders are entitled access to the full ameliorative provisions of the juvenile code and may not be precluded from consideration of probation. He asserts the trial court and the Court of Appeals erred in holding to the contrary. Bloyer asks this Court to address and reconcile what he believes are patently conflicting rulings in *Taylor* and *Merriman*, urging us to disregard *Taylor* as outdated and incompatible with or superseded by "current" interpretations of the juvenile code. He argues applying KRS 532.045 to youthful offenders results in disproportionate sentencing and cruel and unusual punishment in violation of Sections Two, Eleven, and Fourteen of the Kentucky Constitution and the Eighth Amendment to the United States Constitution, and tangentially asserts an equal protection claim. Finally, Bloyer urges this Court to clarify that KRS 640.075 requires youthful offenders retained by DJJ for extended treatment be given the opportunity to present mitigating evidence at a final sentencing hearing. We affirm the court of appeals.

5

"The legislature makes the laws, deciding what is a crime and the amount of punishment to impose for violations thereof. Simply enough, the task of setting a punishment for a given crime is a legislative function." *Phon v. Commonwealth*, 545 S.W.3d 284, 303 (Ky. 2018) (internal citations and quotation marks omitted). Pertinent to our discussion, KRS 640.030 states, in pertinent part:

> A *youthful offender*, who is convicted of, or pleads guilty to, a felony offense in Circuit Court, *shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult* convicted of a felony offense[.]

(Emphasis added). In KRS 640.040, the legislature expressly created four exceptions to the applicability of KRS 640.030, eliminating capital punishment or sentences of life imprisonment without the possibility of parole, exempting youthful offenders from persistent felony offender sentencing and the limitations on parole or probation eligibility contained in KRS 533.060, and excluding adult sentencing procedures if the youth is ultimately convicted of a crime which would not have originally permitted transfer to the circuit court. The language of KRS 640.040 is a clear pronouncement of legislative intent to limit youthful offenders from some of this Commonwealth's harshest penalties. Notably, KRS 532.045 does not appear as an exception to KRS 640.030.

In *Taylor*, this Court squarely addressed the basic question presented in this matter—whether the prohibitions on probation contained in KRS 532.045 apply to youthful offenders. We clearly answered that inquiry in the affirmative. Nevertheless, Bloyer contends he should not be subject to the

6

prohibition due to his status as a youthful offender.  He believes the Court of Appeals incorrectly relied on this Court's decision in *Taylor*, rather than the more recent decision in *Merriman*.  He is incorrect.

Bloyer was convicted of incest pursuant to KRS 530.020, among numerous other charges, relative to the multiple instances of oral and anal sodomization of his seven-year-old brother and rape and sodomization of his six-year-old sister.  KRS 532.045 explicitly prohibits probation of a sentence for such a conviction.  Over twenty-five years ago, *Taylor* explicitly held KRS 532.045 applied to youthful offenders such as Bloyer.  Contrary to Bloyer's vehement assertions otherwise, *Taylor* remains good law.  It is not outdated, has not been superseded, and is not incompatible with "current" interpretations of the juvenile code.

First, the plain language of KRS 532.045 evidences clear legislative intent regarding its applicability to all sexual offenders meeting the criteria established therein.  Subsection two—which contains the probation prohibitions—begins with the phrase "[n]otwithstanding other provisions of applicable law . . . ."

> The ordinary meaning of "notwithstanding" is "in spite of," or "without prevention or obstruction from or by."  Webster's Third New International Dictionary 1545 (1986); Black's Law Dictionary 1091 (7th ed. 1999) ("Despite; in spite of").  In statutes, the word "shows which provision prevails in the event of a clash."  A. Scalia & B. Garner, Reading Law:  The Interpretation of Legal Texts 126–127 (2012).

*N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 939 (2017).  *See also Abel v. Austin*, 411 S.W.3d 728, 738 (Ky. 2013) (using "notwithstanding" in a statute evinces

7

plain legislative intent to rule out applicability of other statutes). Our goal in statutory interpretation is to carry out the intent of the legislature. *Jefferson Cnty. Bd. of Educ. v. Fell,* 391 S.W.3d 713, 718 (Ky. 2012); *Saxton v. Commonwealth,* 315 S.W.3d 293, 300 (Ky. 2010) (discerning and effectuating legislative intent is the cardinal rule of statutory construction); *see also* KRS 446.080(1) ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature").

In enacting KRS 532.045, the General Assembly clearly intended to impose harsher penalties without the benefit of early release for persons who commit the specific offenses enumerated therein. "The legislative intent contributing to this prohibition against probation of sentences pursuant to sexual abuse of a minor mirrors both the legislature's and society's vehement disdain for such acts and the seriousness of the crime." *Porter v. Commonwealth,* 841 S.W.2d 166, 168-69 (Ky. 1992). The existence of other provisions in other chapters or sections of law are made inapplicable based on the legislature's use of the word "notwithstanding."

Next, the omission from KRS 640.040 of KRS 532.045 as an exception to probation limitations for juvenile offenders must be viewed as purposeful legislative action, as must the omission of an exception for application to juveniles in the language of KRS 532.045 itself. If the General Assembly intends for juveniles to be exempt from application of the probationary prohibition, it must take necessary actions to evince that intent by amending the statutes accordingly. In the twenty-five years since we decided *Taylor,* KRS

8

532.045 has been amended no less than six times. KRS 640.040 was amended within a year of *Taylor*. None of the amendments have been contrary to the interpretation laid down in *Taylor* or subsequent decisions relying on it. This lack of action by the General Assembly evidences its acquiescence with our interpretation. "[T]he failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation of its statute when it does not amend the statute interpreted." *Toyota Motor Mfg., Ky., Inc. v. Prichard*, 532 S.W.3d 633, 636 (Ky. 2017) (quoting *Rye v. Weasel*, 934 S.W.2d 257, 262 (Ky. 1996)).

Further, our holding in *Merriman* did not overrule or abrogate *Taylor*. In *Merriman*, this Court examined whether the Violent Offender Statute, KRS 439.3401, applied to youthful offenders, ultimately deciding it did not. *Merriman* did not mention *Taylor* or KRS 532.045 because neither was in issue. Contrary to the assertion by the Court of Appeals as reiterated by Bloyer, there is no "gulf between the logic of *Taylor* and *Merriman*." As we have previously explained, "the holding in *Merriman* is confined to application of the probation-eligibility constraints of the Violent Offender Statute to youthful offenders." *Edwards v. Harrod*, 391 S.W.3d 755, 760 (Ky. 2013). *Merriman* does not, as Bloyer asserts, stand for the blanket proposition that all youthful offenders are eligible for probation regardless of their crimes or statutory prohibitions against early release. The language of the Violent Offender Statute differs dramatically from that contained in KRS 532.045 and the former does not contain the

9

"shield" phrase "notwithstanding other provisions of applicable law . . . ." *See Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 791 (Ky. 2019). "[*N*]*otwithstanding* is a fail-safe way of ensuring that the clause it introduces will absolutely, positively prevail." A. Scalia & B. Garner at 127. Thus, *Merriman* cannot be seen as altering our decision in *Taylor* and is limited in its application to the issues actually decided therein.

Thus, as we explained in *Taylor*, the prohibitions on probation for certain sexual offenses applies with equal force to adults and youthful offenders. Bloyer's crimes clearly place him in the category of offenders covered by KRS 532.045. The trial court correctly so held in denying him probation. There was no error.

Bloyer next presents several constitutional challenges to application of KRS 532.045. He contends denying him consideration for probation creates sentencing disproportionate to the nature of the offense and constitutes cruel and unusual punishment. Bloyer also asserts he is a member of a "suspect class" and precluding him from consideration for probation raises an equal protection claim because applying adult sentencing provisions to juveniles cannot pass the rational basis test. None of his constitutional challenges have merit.

"The Eighth Amendment's prohibition of cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions. That right . . . flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense."

10

*Miller v. Alabama,* 567 U.S. 460, 469, (2012) (internal citations and quotation marks omitted). The Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." *Phon,* 545 S.W.3d at 298 (internal citations and quotation marks omitted). The United States Supreme Court instructs the determination of proportionality is to begin with a comparison of the severity of the sentence in light of the gravity of the offense. *Id.* (quoting *Graham v. Florida,* 560 U.S. 48, 60 (2010)). Conclusions of gross disproportionality are "rare." *Id.*

Bloyer's crimes were not born of petty, mischievous, juvenile behavior. He committed multiple sexually deviant acts against his younger siblings, violating them in numerous ways. Bloyer admitted to orally and anally sodomizing his seven-year-old brother. He admitted to raping and orally sodomizing his kindergarten-aged sister, placing his penis on her, and inserting the handle of a dust pan in her vagina. Bloyer entered unconditional guilty pleas to twelve Class B felonies and two Class C felonies as a result of his criminal actions. For his heinous actions, he received a relatively lenient sentence of fifteen years' incarceration, well below the statutory maximum. Despite his protestations to the contrary, we cannot say Bloyer's sentence was constitutionally disproportionate nor can it be said to be cruel and unusual. Further, probation is not a right; it is a matter of legislative grace. *Burke v. Commonwealth,* 506 S.W.3d 307, 314 (Ky. 2016). Thus, the General Assembly's explicit decision to deny consideration of probation for offenders such as Bloyer does not change the constitutional calculus in any way.

Bloyer next contends treating him as an adult violates his right to equal protection. "Citizens of Kentucky are entitled to equal protection of the law under the 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution." *D.F. v. Codell,* 127 S.W.3d 571, 575 (Ky. 2003). We utilize the rational basis test to decide equal protection claims which do not involve a suspect class or interfere with fundamental rights. *Mobley v. Armstrong,* 978 S.W.2d 307, 309 (Ky. 1998). "[T]he burden is on the party claiming a violation of equal protection to establish that the statutory distinction is without a rational basis." *Id.* Bloyer mischaracterizes and misconstrues the rational basis test by attempting to shift the burden to the Commonwealth "to prove that it was rational to treat children that have the same characteristics as [Bloyer] the same way as an adult offender." Statutes are presumed to be constitutional and the Commonwealth has no burden to produce evidence supporting the rationality of any statutory classifications. *Commonwealth v. Howard,* 969 S.W.2d 700, 703 (Ky. 1998). Bloyer's assertion he is a member of a suspect class misses wide of the mark. "Juveniles are not members of a suspect class and there is no constitutional right to be treated as a juvenile." *Caldwell v. Commonwealth,* 133 S.W.3d 445, 453 (Ky. 2004). Further, the language of KRS 532.045 creates no distinctions between adult and youthful offenders. The General Assembly's desire for protection of the public from serious sexual offenders provides a rational and reasonable basis for the decision to prohibit consideration of probation for all such offenders, regardless of age. Bloyer's contrary arguments are without merit.

Finally, Bloyer requests we clarify the provisions of KRS 640.075(4) to definitively state that statute requires trial courts to permit a youthful offender to present evidence at final sentencing if they have been retained by DJJ for extended treatment. However, Bloyer was permitted to present unfettered evidence at a lengthy sentencing hearing. As he was granted the relief he now seeks, there is no controversy for this Court to decide—nor does Bloyer indicate there ever was such an issue—and any discussion of the matter would amount to nothing more than an impermissible advisory opinion. "As we often say, we do not render purely advisory opinions." *Commonwealth v. Terrell*, 464 S.W.3d 495, 499 (Ky. 2015).

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Suzanne A. Hopf
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Kentucky Attorney General

Aspen Roberts
Assistant Attorney General