The COURIER–JOURNAL AND LOUIS-
VILLE TIMES COMPANY & Cary B.
Willis, Appellants,

v.

Hon. Olga PEERS, Judge, Jefferson
Circuit Court, Appellee.

No. 87–SC–588–MR.

Supreme Court of Kentucky.

March 3, 1988.

Jon L. Fleischaker, Kimberly K. Greene, Wyatt, Tarrant & Combs, Louisville, for appellants.

N. Scott Lilly, First Asst. Co. Atty., Louisville, for appellee.

LEIBSON, Justice.

The appellants, the Courier–Journal and Louisville Times Company and Cary B. Willis (hereinafter "Courier–Journal"), seek access to the court file maintained by the Jefferson Circuit Court, the Hon. Olga Peers, Judge, presiding, styled *Byron Lang v. Bremer Ehrler, Jefferson County Judge Executive, et al.* The underlying case involved a civil action by a former County employee, a police officer, against County government and several government officials. At the commencement of trial, while in the process of arguing preliminary motions, the parties agreed upon a settlement, and thereupon, at the request of the parties, the court ordered the entire file sealed.

The same day, a newspaper reporter for the Courier–Journal, Cary B. Willis, sought access to the file which was denied. The Courier–Journal contacted counsel, who went to the Judge's Chambers to investigate. According to counsel's Affidavit, which stands undenied, counsel was informed that the basis for sealing the file was to keep confidential certain information concerning an unidentified individual's mental status. The court advised the Courier–Journal's counsel that the entire file was sealed, not just the portion characterized as "sensitive information." Counsel then asked the judge orally and *ex parte*, and was denied, an opportunity for a hearing on the Courier–Journal's objections to the Order sealing the file. The court stated that nothing would change the court's mind on this and that the court would not vacate the Order sealing the file or consider the matter further.

The Courier–Journal then filed an original action in the Court of Appeals, seeking "Declarative Relief and Permanent Injunctive Relief in the Nature of Prohibition or Mandamus." The Court of Appeals denied relief, and this appeal followed.

The Petition in the Court of Appeals sought declaratory relief to the effect that the newspaper's "constitutional and common law rights of access to judicial proceedings" had been violated, injunctive relief compelling the trial court to vacate the Order sealing the file, and finally an Order of Mandamus compelling the trial court to provide the newspaper with an opportunity to be heard upon its request to seek access to the file.

■ At the outset, we agree with the Court of Appeals on the first two questions presented. The Court of Appeals has no authority to consider an original action for a declaratory judgment. Its jurisdiction is limited by Section 111(2) of the Kentucky Constitution to appellate jurisdiction only. Further, under KRS 418.040, the circuit court, not the Court of Appeals is the appropriate forum in which to seek a declaration of rights. Likewise, the Court of Appeals has no authority in an original action to grant injunctive relief compelling the trial court to provide the newspaper with access to the file. A trial court, not an appellate court, is the appropriate forum for an original action seeking injunctive relief. CR 65.04.

■ The issue that merits more than perfunctory appellate consideration, and the critical issue before us, is the newspaper's right to petition the Court of Appeals for an order of mandamus to compel the trial judge to conduct a hearing on whether the file should have been sealed and whether the newspaper was properly denied access. It is not the function of an appellate court to conduct an original action for injunctive relief, or to direct a trial court on how to exercise its discretion. However, it is the function of an appellate court, in appropriate circumstances where the trial court has refused to act, to issue an order compelling the trial court to conduct a hearing and adjudicate on subjects within

its jurisdiction where the trial court neglects or refuses to do so. *Com. v. Wilson,* Ky., 622 S.W.2d 912 (1981); *Holmes v. Hume,* Ky., 424 S.W.2d 824 (1968). Mandamus will lie to set a court in motion, although it cannot be used to control the result. *Hargis v. Swope,* 272 Ky. 257, 114 S.W.2d 75 (1938). Thus the sole question before us on this appeal is whether the Court of Appeals erred in refusing to order the trial court to conduct a hearing to consider the newspaper's objections to the Order of closure and to decide whether the newspaper was entitled to access to the file in the underlying case.

■ The principal case relied on in the Court of Appeals in denying this aspect of Courier-Journal's petition was *Courier-Journal v. McDonald,* Ky., 524 S.W.2d 633 (1974). In *McDonald,* in a situation somewhat similar to the present case, our Court held that the newspapers were precluded from seeking a writ of mandamus because they were "not *parties* to the underlying suit" that they sought to investigate, stating:

"Since they [the newspapers] could not have had the order vacated by proceeding directly in the circuit court, obviously they have no standing to ask this court [the appellate court] to direct that the order be vacated." 524 S.W.2d at 635.

*McDonald* states that the appropriate method for the newspaper for seeking relief is to file a new circuit court "civil action in which the question of whether the order is a valid basis for denial of an inspection of the city records can be placed in issue." *Id.*

Since the Court of Appeals in the present case was bound by our previous decision in *McDonald,* it was compelled to deny the Courier-Journal relief in the present case. However, the Courier-Journal urges that *McDonald* should be overruled on the basis of important decisions of the United States Supreme Court and of our Court since *McDonald* granting relief by way of mandamus where the trial court refused access to court proceedings or court records, as well as cases involving prior restraint from publication of material already in the hands of the news media.

The law regarding access by the news media to court proceedings has gone through a period of significant evolution and development since our 1974 decision in *Courier–Journal v. McDonald.* The procedure regarding standing to object enunciated in federal court cases and followed in our own state court decisions since *McDonald* has recognized the right of the news media to a mandamus remedy in the appellate courts where the trial courts have refused access to court proceedings. *See Lexington Herald–Leader Co., Inc. v. Meigs,* Ky., 660 S.W.2d 658 (1983); *Lexington Herald–Leader Co., Inc. v. Tackett,* Ky., 601 S.W.2d 905 (1980); *Ashland Pub. Co. v. Asbury,* Ky.App., 612 S.W.2d 749 (1980). In these cases our appellate courts ruled on news media petitions for writs of prohibition or mandamus. And in *Meigs* and *Tackett,* the writs were granted after the underlying trials were completed, thus recognizing (at least sub silentio) that this was an appropriate remedy for the news media denied access to court proceedings even after the proceedings were completed. Some of the leading United States Supreme Court decisions on the subject are: *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (Press–Enterprise I); *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (Press–Enterprise II); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).

The First Amendment guarantee of freedom of the press and the Sixth Amendment guarantee of public trial in criminal cases, as presently interpreted and applied in judicial decisions, have placed the news media in a unique position in demanding access to court proceedings wherein the media is permitted to intervene and demand access even though a nonparty, and, if denied intervention or refused a hearing, is permitted to attack the decision in the appellate court by writ of prohibition or mandamus. This includes the right to gather news about a civil case. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.

2d 626 (1972); *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir.1975). In short, "to preserve higher values," the news media have been made an exception to the usual rules regarding standing to intervene and standing to seek mandamus where access is denied.

Our decision in *Lexington Herald–Leader Co., Inc. v. Meigs, supra,* is illustrative. The trial court denied the news media access to individual voir dire proceedings, and the representatives of the press immediately sought a writ of prohibition to compel opening the procedure. The Court of Appeals denied the writ, and on appeal to our Court we directed the trial court "to hold a hearing on the issue of whether the press and the public should be excluded from the voir dire." 660 S.W.2d at 660. Thus, although we did not prohibit the trial court from excluding the press, we granted mandamus compelling the trial court to conduct a hearing and to enter "appropriate findings relative to the hearing." *Id.* Our holding today is consistent with that decision.

A number of other observations in *Lexington Herald–Leader Co., Inc. v. Meigs* are appropriate. After the trial court conducted a hearing as ordered by our Court, it then made a decision to exclude the press which we upheld as an appropriate ruling on appeal. The point is that we compelled the trial court to conduct a hearing on whether there were compelling reasons to exclude the news media and whether there were viable alternatives sufficient to protect the rights of the litigants, but we recognized that the trial court was the appropriate forum to make these decisions, which would then be upheld absent a record showing abuse of discretion.

Next, we take note that in *Meigs,* after the trial court conducted a hearing and again denied access and the news media again applied for extraordinary relief from the appellate court, the case was over but the petition for mandamus was still considered on the merits. We concluded "that the controversy before us is not moot simply because voir dire (and now the trial) has been completed." *Id.* at 661. We cited from *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) to the effect that the principle of "mootness" will not apply in such cases because "the underlying dispute between the parties is one 'capable of repetition, yet evading review.' " 427 U.S. at 546, 96 S.Ct. at 2796, 49 L.Ed.2d at 690. The news media is entitled to no special privileges simply because it is a powerful business. Nevertheless, the law recognizes it occupies a unique position as the eyes and ears of the public, a status authorizing it to demand access as the public's representative whenever the public's right to know outweighs the litigants' lawfully protected rights. Lawfully protected rights include both constitutionally protected rights and the right of privacy in its various aspects as appropriately defined in court decisions.

Our 1974 decision in *Courier–Journal v. McDonald* did not take into account the evolving status of the news media as representative of the public's right of access. We recognize that the government belongs to the people, that its activities are subject to public scrutiny, and that the news media is a primary source for protecting the right of public access. This right includes the public's "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579 (1978). As stated in *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1177 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984):

> "Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings. These principles apply as well to the determination of whether to permit access to information contained in court documents because court records often provide important, sometimes the only, bases or explanations for a court's decision."

The Jefferson County Attorney has argued vehemently that there is a difference between right of public access to criminal proceedings in progress and right of access

to civil judicial proceedings and records. It is true, as argued, that many of the cases in which the courts have spoken have been criminal trials wherein the issue was the right of closure, and that the Sixth Amendment (but not the First) speaks only to "public trial" in a criminal case. Such differences as exist are not critical in deciding the issue before us. Counsel argues that the law related to closure during a criminal trial requires that those seeking closure establish a "compelling interest" because it is constitutionally protected, but that right of access to court records in a civil case is only a "common law right" with the issue limited to a "balancing test wherein the court is to decide whether the litigants' rights of privacy are outweighed by the public's right to know." The Jefferson County Attorney cites *Warner Communications, supra,* which states that the right of access to judicial records is not absolute and is not entitled to the same level of protection afforded constitutional rights. 435 U.S. at 597–98, 98 S.Ct. at 1311–12, 55 L.Ed.2d at 579–80. However, the important point for us, upheld in the *Warner Communications* case, is the fundamental right of the news media to a hearing to decide whether the hearing should be closed or the record sealed from access to the public and the media. *Warner* did not hold, as did the trial court in the present case, that no hearing is necessary. On the contrary, *Warner* presupposes a hearing with findings of fact and legal conclusions to decide whether the news media should be denied access.

In *Valley Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289 (9th Cir. 1986), cited by the County Attorney in support of the balancing test, the appellate court, in granting a writ of mandamus, summarized the issue to be decided as follows:

"Such factors as promoting the public's understanding of the judicial process and of significant public events justify creating a 'strong presumption' in favor of copying access. Counseling against such access would be the likelihood of an improper use.... In short, the district court must weigh 'the interests advanced by the parties in the light of the public interest and the duty of the courts.' *Warner Communications,* 435 U.S. at 602, 98 S.Ct. at 1314." *Id.* at 1294.

The County Attorney's Brief concedes that there is "some First Amendment right of access to court documents in civil actions." It must follow that the Courier–Journal was entitled to a hearing at which the court would consider whether that right of access was outweighed by the litigants' right of privacy.

If the Courier–Journal had moved to intervene and requested a hearing, thereafter it would have been proper to seek mandamus in the Court of Appeals. The situation presented when the press is denied access, either without or after a hearing, represents exigent circumstances justifying coming directly to the appellate courts for an extraordinary remedy, i.e., prohibition or mandamus.

"... an expedited review is necessary in order to make the appellate court's decision something more than simply the answer to an issue that is moot or no longer relevant.... [T]he normal appellate procedure is inadequate in cases where case files are sought and, therefore, writ of prohibition is proper." *Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 208 (Minn. 1986).

In relative terms, in reporting the news, time is of the essence. News is news when it happens and the news media needs access while it is still news and not history. The value of investigative reporting as a tool to discovery of matters of public importance is directly proportional to the speed of access. This is true when investigating court records after the case is closed as well as with a case in progress.

In this case the Courier–Journal is seeking access to the court file to investigate pleadings, depositions and interrogatories in the file, and the terms of the settlement between the former county employee and the county officials in so far as the file may disclose. The opportunity to investigate the contents of the file existed before the

file was sealed, but previous existence of this opportunity does not mitigate against the newsworthiness of the case, nor against the public's need for information. There is no relevancy in this situation between the previous opportunity and subsequent unavailability. On the contrary, perhaps it is the fact that the litigants wanted the file closed which suggested that there might be need for public scrutiny.

The County Attorney argues that pretrial depositions and interrogatories are not necessarily public components of the trial. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). But this does not foreclose the present issue. This means only that the news media has no absolute right to these materials, but only a limited right which can be foreclosed if the litigants' rights of privacy outweigh the public's right to know.

This case involves county government and county officials sued by a former police officer. The settlement may involve expenditure of public funds. These circumstances weigh in favor of requiring the record to be open to public inspection. On the other hand, the court may find that there are reasons for privacy so significant that they outweigh the need for public disclosure, and may refuse access if appropriate. We recognize that in conducting a hearing to decide this issue the trial judge may find it necessary to utilize an *in camera* inspection. If so, any material as to which access is denied after conducting an *in camera* inspection will be a part of the record which can then be reviewed by an appellate court. Without a hearing, the appellate court has nothing to review in deciding whether access was appropriately denied.

Counsel for the Courier–Journal should have proceeded by filing a Motion to Intervene and a request for a hearing, with notice to the litigants in the underlying case. On the other hand, the trial judge should have refused to discuss any aspect of this matter with counsel except to direct that a Motion be filed seeking whatever remedy or relief that the newspaper should deem appropriate.

Finally, we take note that the trial court's decision to refuse to hear the newspaper's objections to sealing the record, and the trial court's pronouncement that nothing would change the court's mind or cause it to vacate the Order sealing the court file, all occurred at an informal, *ex parte* conference in Chambers between the newspaper's attorney and the trial judge, a hearing without notice to the litigants involved in the underlying case of *Lang v. Ehrler.* We do not approve of this informal approach by either the lawyer or the judge.

The decision of the Court of Appeals is affirmed. If the Courier–Journal makes an appropriate motion to intervene and requests a hearing, the trial judge shall conduct a hearing consistent with this Opinion to decide whether all or portions of the record in the underlying case of *Lang v. Ehrler* shall be made available for inspection by the news media. We overrule *Courier–Journal v. McDonald,* Ky., 524 S.W.2d 633 (1974) to the extent that it is in conflict with this Opinion.

STEPHENS, C.J., and GANT, LAMBERT, STEPHENSON and WINTERSHEIMER, JJ., concur.

VANCE, J., concurs in results only.