JONES, JUDGE:
This is an original proceeding for a writ of mandamus or prohibition. WPSD, The Paducah Sun, and the Marshall County Tribune-Courier (Petitioners) filed with this Court two petitions for relief pursuant to CR 2 76.36. The petition filed in 2018-CA-000277 seeks release, by the Marshall Circuit Court, of the recording of the criminal arraignment held on February 16, 2018, in Case No. 18-CR-00030, and to allow media access to further criminal proceedings held in the case. The petition filed in 2018-CA-000279 requests relief from what Petitioners believe to be a sealed gag order and further seeks access to the circuit court record in Marshall Circuit Court Case No. 18-CR-00030.
The standards for evaluating a petition for a writ of prohibition or mandamus under each class are stated in Hoskins v. Maricle , 150 S.W.3d 1, 10 (Ky. 2004) :
A writ ... may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.
*95 "Relief by way of prohibition or mandamus is an extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief." Bender v. Eaton , 343 S.W.2d 799, 800 (Ky. 1961). Petitions for writs of mandamus alleging that a court is acting erroneously, but within its jurisdiction, will not be granted "unless the petitioner established, as conditions precedent, that he (a) had no adequate remedy by appeal or otherwise, and (b) would suffer great and irreparable injury (if error has been committed and relief denied)." Id. at 801.
Petitioners also moved the Court, pursuant to CR 76.36(4), for intermediate relief pending resolution of the petitions. On March 1, 2018, this Court entered an order granting the motions for intermediate relief. The order prohibited the Respondent from closing any further proceeding in the case which would ordinarily be open to the public. The order also prohibited the Respondent from sealing any records in the case, except upon motion of a party followed by compliance with the applicable procedures mandated by its cited jurisprudence. The order was to remain in effect pending the adjudication of the petitions for writ of mandamus by a three-judge panel of this Court.
This Court recognized when granting intermediate relief in this case that it would "ring a bell" that could not be unrung after review by the three-judge panel. For the same reasons this Court found that the actions of the Respondent presented immediate and irreparable harm and warranted granting the motions for intermediate relief, the petitions for writ of mandamus and prohibition are hereby GRANTED. The order entered on March 1, 2018, written by Hon. Judge Glenn Acree, included a statement of all the relevant facts and a thorough analysis of the legal issues. We adopt it as our opinion.
These proceedings arise from the tragic schoolground shooting at Marshall County High School on January 23, 2018. Real Party in Interest, Gabriel Ross Parker, fifteen years of age, has been charged with firing a handgun into a crowd of students, killing two and injuring numerous others. These circumstances required initiation of a "public offense action." KRS 3 600.020(51).
Because Parker had not reached the age of majority, his case was addressed initially under Kentucky's juvenile code. The district court conducted a preliminary hearing to determine whether there was "probable cause to believe that the child [Parker] committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony." KRS 635.020(4). The district court did find probable cause and followed the legislative mandate that Parker "shall be transferred to the Circuit Court for trial as an adult...." Id. (emphasis added). The order to transfer was entered by the district court on February 9, 2018.
"[O]nce the district court has reasonable cause to believe that a child before the court has committed a firearm felony as described in subsection (4) of KRS 635.020, jurisdiction vests in the circuit court...." Commonwealth v. Halsell , 934 S.W.2d 552, 556 (Ky. 1996) (finding KRS 635.020(4) constitutional and in harmony with KRS 640.010(2) ). Consequently, on February 13, 2018, the Marshall County Grand Jury returned an indictment charging Parker with two (2)
*96 counts of murder and fourteen (14) counts of first degree assault.
On February 16, 2018, the Respondent conducted an arraignment, but closed the arraignment to the public and media.
The Respondent's February 20, 2018 order[4] states that "[d]uring the defendant's arraignment hearing on February 16th, 2018, defendant's counsel objected to the jurisdiction of this [circuit] Court claiming the transfer to Circuit Court from the juvenile division of the District Court was not proper." Parker then pleaded not guilty.
Because of the challenge to the circuit court's jurisdiction, the Respondent, in this same February 20, 2018 order, sealed all court records except for the indictment until it could rule on Parker's challenge to transfer. The order allows Parker until March 8, 2018, to brief the challenge to transfer and allows the Commonwealth until March 12, 2018, to respond.
On February 22, 2018, Petitioners filed petitions for writs of mandamus, and motions for intermediate relief, to compel the trial court to: (1) disclose the recording of the arraignment, (2) conduct all further proceedings in public, (3) dissolve a "gag" order that is allegedly, secretly prohibiting counsel and others with knowledge of the case from speaking about the case, and (4) unseal all circuit court records relating to the case (other than records addressed by KRS 635.120(1), (3), and (4) ).
Before proceeding, we wish to make clear that the question now before the Court under CR 76.36(4) is whether harm, both immediate and irreparable, will befall the Petitioners unless the public and press are immediately allowed to attend court proceedings and examine court records in the criminal matter. Several factual assertions in the petitions bear upon issues that are no more than tangential to the question we must answer now. For example, resolution of Petitioners' motions here does not require us to determine the propriety of the circuit court's appointment of the Department of Public Advocacy to represent the Real Party in Interest prior to "the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin , 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed. 2d 158 (1991) (citation and internal quotation marks omitted).[5] Nor is it necessary *97 to know whether the Petitioners had standing to complain about the appointment. Similarly, whether there was a disqualifying relationship between the circuit judge and Parker's mother does not impact the propriety of closing proceedings and sealing records. If doing so is illegal, as Petitioners argue, the motive for doing so will not matter.
CR 76.36(4) states that "[i]f the petitioner requires any relief prior to the expiration of 20 days after the date of filing the petition he/she may move the court on notice for a temporary order on the ground that he/she will suffer immediate and irreparable injury before a hearing may be had on the petition." In Courier-Journal and Louisville Times Co. v. Peers , the Supreme Court of Kentucky stated:
The First Amendment guarantee of freedom of the press and the Sixth Amendment guarantee of public trial in criminal cases, as presently interpreted and applied in judicial decisions, have placed the news media in a unique position in demanding access to court proceedings wherein the media is permitted to intervene and demand access even though a nonparty, and, if denied intervention or refused a hearing, is permitted to attack the decision in the appellate court by writ of prohibition or mandamus.
747 S.W.2d 125, 127 (Ky. 1988). The improper denial of public access to a criminal trial is an error that is capable of repetition, evading review. Id. at 128. Therefore, the question is reviewable upon a petition for writ of mandamus even if the issue is technically moot. Id. The Court stated "[t]he situation presented when the press is denied access, either without or after a hearing, represents exigent circumstances justifying coming directly to the appellate courts for an extraordinary remedy...." Id. at 129. The Court has explained the immediacy of an injury to access:
In relative terms, in reporting the news, time is of the essence. News is news when it happens and the news media needs access while it is still news and not history. The value of investigative reporting as a tool to discovery of matters of public importance is directly proportional to the speed of access. This is true when investigating court records after the case is closed as well as with a case in progress.
Id. More recently, the Court directly held that extraordinary relief is available to remedy the denial of access to criminal proceedings:
Since the media seeking access to court proceedings is never itself party to those proceedings, it has no alternate remedy aside from a writ petition. Because the injury the media claims in such actions is potentially an abridgement of its First Amendment right to access information, great injustice and irreparable injury would indeed result if a meritorious petition were to be denied.
Riley v. Gibson , 338 S.W.3d 230, 234 (Ky. 2011).
*98 In Riley , the Court held the right to public access extends to most, if not all, stages of a criminal prosecution. Id. at 236. The Court explained the purpose of the right of access as follows:
This openness has what is sometimes described as a "community therapeutic value." Criminal acts, especially violent crimes, often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and desire to have justice done. Whether this is viewed as retribution or otherwise is irrelevant. When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct....
Id. at 235-36 (quoting Press-Enterprise v. Superior Court I , 464 U.S. 501, 508-09, 104 S.Ct. 819, 78 L.Ed. 2d 629 (1984) ). Without question, Petitioners have demonstrated the availability of immediate extraordinary relief. The Court now turns to whether Petitioners are entitled to such relief.
This Court interprets the First Amendment of the Constitution of the United States, and Sections 8 and 14 of the Kentucky Constitution together as creating a presumption of openness in criminal proceedings. Ashland Publishing Co. v. Asbury , 612 S.W.2d 749, 751-52 (Ky. App. 1980). The presumption of openness extends equally to pretrial criminal proceedings. Id.
However, the right to access is not absolute. The legislature has seen fit to create statutory confidentiality protections for juveniles. Such protections are of two types: restrictions on the right of the public (and therefore the press) to attend hearings and the right of access to court records. We shall address them separately and in that order.
Applicable to our analysis, KRS 610.070(3) says "[t]he general public shall be excluded" from district court juvenile adjudications, conducted without a jury, but only for those children "whose cases are under the jurisdiction of the court ...." KRS 610.070(1) (emphasis added). This excluding of the public lasts so long as the district court has jurisdiction of the case. Beginning "at the time the decision is made by the court to try the child as an adult," that child "shall ... be subject to the arrest, post-arrest, and criminal procedures that apply to an adult, except for the place of confinement...." KRS 610.015(1). Criminal procedures that apply to an adult include the requirement that the "[a]rraignment shall be conducted in open court...." RCr 8.02.
Therefore, once the district court decides the child should be tried as an adult, even when that decision is compelled by KRS 635.020(4), and once "jurisdiction vests in the circuit court[,]" Halsell , 934 S.W.2d at 556, subsequent hearings including the "[a]rraignment shall be conducted in open court[.]" RCr 8.02.
Nothing in these statutory confidentiality protections justifies the Respondent's decision to close the arraignment to the public. The statutory protections closing hearings are no longer applicable to this case. Respondent's reliance on statute as a basis for closing the arraignment to the public was error.
Different statutory confidentiality protections apply to court records. "Records, *99 limited to the records of the present case in which the child has been charged, relating to a child charged under this section [as an adult] shall not be made public until after the child has been indicted and arraigned on the offense for trial of the child as an adult." KRS 610.015(3) (emphasis added).
Now that the arraignment has taken place, there is no statutory justification for preventing public access to the record in this case. The statutory protections preventing disclosure of court records are no longer applicable to this case. Respondent's reliance on statute as a basis for refusing public access to the records was error.
Both the Respondent and the Real Party in Interest, Parker, argue that these statutory confidentiality protections should remain in place and applicable until resolution of Parker's challenge to the propriety of the district court's order to transfer. In support of this proposition, Parker relies on F.T.P. v. Courier-Journal and Louisville Times Co. , 774 S.W.2d 444 (Ky. 1989). This case is easily distinguishable.
In F.T.P. , "when the Commonwealth sought to transfer the case [from Jefferson District Court] to the Jefferson Circuit Court[ ] for trial of F.T.P. as a youthful offender[,] ... the juvenile's attorney [filed a motion in district court] to challenge the constitutionality of the transfer statute, KRS 640.010." Id. at 445. "[T]he district court entered an order declaring the transfer statute unconstitutional...." Id.
The most significant difference to note is that the juvenile's attorney did not wait until the transfer occurred and jurisdiction vested in the circuit court. As the Supreme Court noted, "F.T.P. is still a juvenile and still entitled to protection of the [statutory confidentiality protections because t]he transfer hearing has not as yet been concluded." Id. at 446. Then, the Supreme Court presciently described the circumstances of Parker's case: "It may be that this case will ultimately be transferred to the circuit court for trial. If and when that occurs F.T.P. will then be stripped of the protection afforded by these statutes and will be treated as an adult...." Id.
Parker has preserved the right to appellate review of his challenge to the transfer, when and if that need and time arrives. However, the statutory confidentiality protections have been exhausted and are now inapplicable, no matter how the Respondent rules on Parker's challenge to the transfer.
This does not end the analysis, however. There is the important non-statutory confidentiality protection to consider. The Kentucky Supreme Court describes that protection, "not[ing] that the right to a neutral jury is a sufficiently important interest to outweigh the public and press's right of access." Courier-Journal, Inc. v. McDonald-Burkman , 298 S.W.3d 846, 850 (Ky. 2009) (citing Lexington Herald-Leader Co., Inc. v. Meigs , 660 S.W.2d 658, 663 (Ky. 1983) ).
This Court addressed the balancing in Ashland Publishing , 612 S.W.2d at 752. We said:
[A] pretrial hearing should be closed to the public and press only after a determination is made that there is a substantial probability that the right of the accused to a fair trial or his other constitutional rights will be otherwise irreparably damaged. If the evidence to be introduced at the pretrial hearing is found to be of a kind that would not be admissible at the trial itself, and if this evidence is not otherwise already known generally to the press and public, and the trial court *100 reasonably believes that is dissemination to the public will probably irreparably damage the constitutional rights of the accused, then closure should be ordered. Many factors bear upon the danger of irreparable damage in any given case, and each must be considered on its own merits. Before ordering closure, however, the trial judge should consider the utility of other reasonable methods available to protect the rights of the accused short of closure. Of course, at the time the motion for closure is made or heard any member of the public or press who is then present and objects must be given an opportunity to be heard on the question. If closure is ordered, specific findings should be made setting out the need for closure.
Id. at 753 (emphasis added).
Subsequently, the Supreme Court of Kentucky established a three-part test for whether a criminal proceeding may be closed to the public as follows:
(1) There must be a hearing ... [b]efore ordering closure.... [T]he trial judge should consider the utility of other reasonable methods available to protect the rights of the accused short of closure, and ... any member of the public or press who is then present and objects (at the time the motion for closure is made or heard) must be given an opportunity to be heard on the question. If closure is ordered, specific findings should be made setting out the need for closure. As Chief Justice Burger stated in Richmond Newspapers [, Inc. v.Virginia , 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ] ... "Absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public."
(2) At the hearing to decide the question of closure, the accused who seeks closure has the burden of persuasion. The burden of proof is on those who would infringe the First Amendment right of access, not on those who assert it. However, whether this means that the accused is required to present any evidence, and if so what evidence, depends on the circumstances of the particular case. A distinction must be made as to whether a given proceeding historically has been opened or closed. Individual voir dire of prospective jurors out of the hearing of their fellow jurors, when appropriate, is only appropriate because of the same type of considerations that apply to the traditional bench conference. If the scope of the right of access is partly defined by the history of openness of criminal procedures, then its historical limits as regards openness also have to be considered as part of its definition. In the case of traditional bench conferences or historically accepted use of in-camera proceedings, the presumption with respect to such proceedings, or parts of proceedings, which have been traditionally closed, is that the denial of public access is legitimate. In such cases the burden of proof has not shifted to the press or public and the preliminary findings that must first be made have not been dispelled. But in such instances the public or press opposing the closure must show particular public policy reasons for access strong enough to overcome the tradition of closure.
(3) The burden of proof on the accused when he would infringe the public and press right of access is threefold: (a) He must show that the right or interest he wishes to protect is sufficiently important to warrant the *101 extraordinary protection of the closed court. The right to a neutral jury qualifies as such a right or interest. (b) He must show that the asserted right or interest probably cannot be adequately protected by less restrictive alternatives to closure. (c) He must show that it is probable that the right or interest he seeks to protect, in this case his right to an impartial jury, will be protected by a closed proceeding.
Meigs , 660 S.W.2d at 663-64 (footnotes and some internal citations omitted).
In this case, Respondent failed to conduct the hearing required by Meigs and closed the arraignment without making specific findings. And, obviously, Respondent gave no consideration to less restrictive measures.
Without the hearing required by Meigs , there is no justification for closing any hearings and no justification for sealing any records. As noted, the burden is on the party seeking to close hearings or seal records to prove the constitutional right to a fair criminal trial outweighs the public's and the press's right of access to hearings and records. Not only has that burden not been carried, the claim that it can be carried has yet to be asserted.
Finally, Petitioners assert that the trial court has imposed an improper gag order. Without an open record, this Court cannot review this claim. We simply note the representations of the Respondent and counsel for Parker that no such gag order is in place. We must presume there is no gag order. However, we repeat the suspicion expressed in Peers that "perhaps it is the fact that the litigants wanted the file closed which suggested that there might be need for public scrutiny." Peers , 747 S.W.2d at 130. We simply remind the Respondent that, not unlike the open hearings and open records protection described in Meigs , there must be a hearing, consideration of less restrictive means, and specific findings before a gag order can be imposed. James v. Hines , 63 S.W.3d 602, 607-08 (Ky. App. 1998).
Based on the foregoing, the Court ORDERS that the petitions for writ of mandamus and prohibition are hereby GRANTED. The Petitioners shall be provided a copy of the recording of the criminal arraignment held on February 16, 2018, in Marshall Circuit Court Case No. 18-CR-00030. The Respondent shall refrain from closing any future proceeding in this case which is ordinarily open to the public and shall refrain from sealing any records in this case, except upon motion of a party followed by compliance with the applicable procedures mandated by the jurisprudence cited in this Order.
ALL CONCUR.

This order is attached to Respondent's responses to the petitions. Although the order is entitled, "Agreed Order," it is signed only by the judge.

Respondent Judge Jameson cites Justice Stevens' dissent in this case for the proposition that the Supreme Court "squarely rejected 'the State's suggestion that respondents' requests for the appointment of counsel should be construed to apply only to representation in formal legal proceedings.' " McNeil , 501 U.S. at 184-85, 111 S.Ct. at 2212 (quoting Michigan v. Jackson , 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986), overruled by Montejo v. Louisiana , 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009) ). However, the Kentucky Supreme Court has clearly held:
except for constitutionally mandated authority to issue search warrants, courts are not vested with general jurisdiction over a criminal matter until the criminal matter becomes a criminal case upon commencement of prosecution. We agree with West [v. Commonwealth , 887 S.W.2d 338 (Ky. 1994) ] in the general sense that an accused has a right to an attorney during an interrogation and RCr [Kentucky Rules of Criminal Procedure] 2.14(2) guarantees attorneys be given access to their clients in custody, but we do not read RCr 2.14(2) as a vehicle for the appointment of an attorney or interference by the judicial branch in pre-prosecution criminal investigations.
Commonwealth v. Terrell , 464 S.W.3d 495, 497 (Ky. 2015). The best articulation in Kentucky jurisprudence of Respondent's position appears to be a minority view penned by Justice Keller in her dissent in Terrell where she said, in summary: "If a trial court cannot appoint an attorney [pre-prosecution in police interrogations] under the auspices of RCr 2.14(2), then RCr 2.14(2) applies only to those who can afford private counsel." Terrell , 464 S.W.3d at 505.